IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02801-KLM

PROGRESSIVE CASUALTY INSURANCE COMPANY,

     Plaintiff,

v.

TAGGART & ASSOCIATES, INC.,

     Defendant.

_____

## ORDER

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **Motion for Summary Judgment** [#34][1]

(the "Motion"), and on Defendant's **Amended Cross-Motion for Summary Judgment**

[#50] (the "Cross-Motion"). Defendant filed a Response [#37] in opposition to the Motion,

and Plaintiff filed a Reply [#44]. Plaintiff filed a Response [#51] to Defendant's Cross-

Motion, and Defendant filed a Reply [#52]. The Court has reviewed the Motions,

Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised

in the premises. For the reasons set forth below, the Motion [#34] is **DENIED** and the

Cross-Motion [#50] is **GRANTED**.

## I. Background

     The facts are largely undisputed. Plaintiff entered into a Producer's Agreement with

_____

[1] "[#34]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Defendant, which permitted Defendant "to solicit, provide quotes, receive applications, bind coverage, and collect and provide receipts for premiums for authorized insurance products . . ." *Producer's Agreement* [#34-1] at 1. The Producer's Agreement also provided that Defendant was obligated to "retain in an orderly fashion and for the period specified in the Underwriting Requirements . . . selections and rejections of optional coverage . . ." *Id.* at 2. The Underwriting Requirements incorporate a document titled "Progressive Retention Schedule for Signed Policy Documents Maintained by Producers," which provides that the retention period "begins to run when the final policy or renewal has cancelled or expired or any claim associated with that policy has closed, whichever is later." *Progressive Retention Schedule* [#34-2] at 1.

Pursuant to the Producer's Agreement, Defendant processed an Application for Insurance on behalf of named insured Thomas Daly ("Daly") in 2005. *See Motion* [#34] at 3; *Response to Motion* [#37] at 9-11; *Application for Insurance* [#34-3]. The Application for Insurance included a form titled "Uninsured/Underinsured Motorist Coverage-Rejection or Election of Lower Limits" ("UM/UIM Election Form"), which contains information about UM/UIM coverage, offers that the insured can purchase UM/UIM coverage up to the liability limits, and directs the insured to select the UM/UIM coverage he desires. *Motion* [#34] at 4; *Response to Motion* [#37] at 5; *Application for Insurance* [#34-3] at 6. The parties agree that Mr. Daly elected coverage of $50,000 per person/$100,000 per accident. *See Scheduling Order* [#26] at 5. Neither party asserts that Mr. Daly ever changed his level of insurance. *See Aff. of Jill Skarda* [#37-3] ¶ 14 ("Since 2005, I have spoken with Mr. Daly at least annually and emailed him more frequently to discuss his personal motor vehicle and motorcycle insurance needs. Over those years, Mr. Daly has renewed his . . . policy

. . . year-to-year.  At no time during those almost 11 years has he ever questioned or complained about the level of insurance coverage . . .").

On October 15, 2012, Mr. Daly was seriously injured while riding a motorcycle covered under the Progressive insurance policy. *See Motion* [#34] at 4; *Response to Motion* [#37] at 12.  Mr. Daly subsequently submitted a UM/UIM claim to Plaintiff, disputing the $50,000 UM/UIM benefits and requesting documentation that he had selected an amount lower than the $500,000 maximum. *Motion* [#34] at 5; *Response to Motion* [#37] at 12.  Plaintiff then requested such documentation from Defendant, who "failed to produce a signed copy of any form reflecting Mr. Daly's election of the lower Uninsured/Underinsured motorist coverage." *See Scheduling Order* [#26] at 5.  Defendant instead provided to Plaintiff the completed, but unsigned, Application, along with copies of e-mails between Defendant and Mr. Daly discussing Mr. Daly's elected coverage. *See Motion* [#34] at 5; *Response to Motion* [#37] at 13; *see also Aff. of Julie Metish* [#37-15] ¶ 3-4.  Plaintiff paid Mr. Daly $500,000 in UM/UIM benefits under the belief that failure to produce a copy of the *signed* election of lower UM/UIM coverage required reformation of the insurance policy to the statutory maximum. *Motion* [#34] at 7; *Response to Motion* [#37] at 13-14.

Plaintiff is seeking reimbursement from Defendant in the amount of $450,000, which is the difference between Mr. Daly's undisputed selection of $50,000 coverage and the $500,000 that Plaintiff ultimately paid Mr. Daly.

Plaintiff filed the Motion [#34] on the basis that there is no genuine issue of material fact because the material facts are undisputed–in sum, that Defendant was required to perform its obligation under the Producer's Agreement to retain the UM/UIM Election Form,

failed to do so, and Plaintiff suffered damages as a result because it was forced to pay the maximum UM/UIM coverage.  Defendant argues, however, that it did not cause Plaintiff's damages because Defendant's inability to produce the signed UM/UIM Election Form did not legally obligate Plaintiff to reform Mr. Daly's insurance policy.

Defendant filed the Cross-Motion [#50], agreeing that the relevant facts are undisputed, and that this case solely presents a question of law.  The parties' briefing on the Cross-Motion for the most part reiterates the arguments contained in the briefing on the Motion.

## II.  Legal Standards

### A.    Motions for Summary Judgment

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Pursuant to Fed. R. Civ. P. 56(a), summary judgment should enter if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine

issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. See 10B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2738 at 356 (3d ed. 1998).

**B.    Choice of Law**

Based on the briefing of both Motions, the parties appear to agree that Colorado law controls this diversity action. Additionally, the Producer's Agreement entered into by the parties provides that the "Agreement will be governed by and interpreted under the laws of the jurisdiction of [the Producer's] address for notices," which is: "PO BOX 147, BOULDER, CO 80306." *Producer's Agreement* [#34-1] at 5-6. Therefore, Colorado law is the substantive law to be applied. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S.

487, 496 (1941) (applying choice of law rules of the forum state in diversity case); *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012) (concluding that Colorado courts apply the most significant relationship test only when the parties have not agreed to a choice of law by contract).

### III.  Plaintiff's Motion for Summary Judgment [#34]

To recover on a breach of contract claim, a party must prove (1) the existence of a contract, (2) that the party performed its duties under the contract, (3) that the other party failed to perform its contractual obligations, and (4) damages resulting from the breach. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  The parties agree that Defendant breached the terms of the Agreement by failing to produce a copy of the signed election of coverage.[2]  However, Defendant argues that the breach did not cause Plaintiff's damages–specifically, that Plaintiff reformed Mr. Daly's policy due to a mistake of law, and that therefore Plaintiff "voluntarily" paid Mr. Daly $450,000 more than the coverage he had elected.  *Response to Motion* [#37] at 24.

The statute at issue is Colo. Rev. Stat. § 10–4–609(2), which provides that before a car insurance policy "is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits."  Colorado courts have interpreted this statute "as creating a one-time duty upon an insurer to notify an insured of the nature and purpose of

---

[2] Defendant admits that it failed to produce Mr. Daly's signed, November 2005 "Uninsured/Underinsured Motorist Coverage-Rejection or Election of Lower Limits" form as required by the Agreement. *See, e.g.*, *Response to Motion* [#37] at 2, 13, 22.

UM/UIM coverage and to offer the insured the opportunity to purchase such coverage in accordance with the insurer's rating plan and rules and in an amount equal to the insured's bodily injury liability limits but in no event in excess of $100,000 per person and $300,000 per accident, whichever is less." *Allstate Ins. v. Parfrey*, 830 P.2d 905, 912 (Colo. 1992). If an insurer does not comply with the statutory requirements, reformation of the contract is required. *Reid v. Geico Gen. Insur. Co.*, 499 F.3d 1163, 1170 (10th Cir. 2007) ("Reformation is also required, however, when an offer of coverage fails to meet statutory requirements.").

In order to fulfill the statutory duty set forth in § 10–4–609(2), Plaintiff provides to its insureds the UM/UIM Election Form. *Motion* [#34] at 4; *Response to Motion* [#37] at 5. The parties agree that the UM/UIM Election Form was provided to Mr. Daly, and that Mr. Daly selected UM/UIM coverage in the amount of $50,000, which is well under the statutory limit of $500,000. *See Scheduling Order* [#26] at 5. Yet, Mr. Daly represented through counsel that he believed he had purchased $500,000 in UM/UIM coverage, the amount equal to his bodily injury coverage.[3] *Motion* [#34-8] at 2-4; [#34-7]; [#34-8]. Plaintiff then asked Defendant to produce the signed copy in order to refute Plaintiff's assertion, and Defendant failed to do so. *Motion* [#34] at 6. Plaintiff argues that Defendant's failure to produce a copy signed by Mr. Daly prohibited Plaintiff from being able to demonstrate compliance with the statutory requirements, and therefore forced Plaintiff to reform the

[3] Plaintiff also points to the fact that Mr. Daly testified during deposition that he did not understand UM/UIM coverage prior to his accident. *Reply in Support of Motion* [#44] at 2-3. However, § 10–4–609(2) does not impose a requirement that an insurer confirm that its insureds understand UM/UIM coverage. *See also Lust v. State Farm Mut. Auto. Ins. Co.*, 412 F. Supp. 2d 1185, 1190 (D. Colo. 2006) (stating that whether plaintiff failed "to read or recall what was mailed" did not "have any bearing on the question of whether [the insurance company] did in fact make a statutorily sufficient offer" of personal injury protection benefits).

policy to provide the maximum coverage. *Id.* at 9.

Defendant correctly counters that Plaintiff misinterpreted the law, because § 10–4–609(2) does not require an insurer to secure a signature when selecting an amount lower than the maximum UM/UIM coverage–rather, a signature is required only when UM/UIM coverage is rejected entirely. *Response to Motion* [#37] at 16.  A signed document is not necessary to demonstrate compliance. *See Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 741 (10th Cir. 2009) (rejecting plaintiff's argument that insurer was required to show a written rejection of UM/UIM coverage; "written rejection of coverage is only required if the insured declines UM/UIM coverage entirely").  The Supreme Court of Colorado has held that the insurer's duty to notify and offer "must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage higher than the minimum statutory liability limits." *Allstate Ins.*, 830 P.2d at 913.  Whether the statutory duty was discharged is determined by a "totality of the circumstances" test. *Id.* at 914.  To examine the totality of the circumstances, "a court may appropriately consider such factors as the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer." *Id.* at 913.

The totality of the circumstances demonstrates as a matter of law that Plaintiff complied with its notice and offer requirements. The parties do not dispute that the statutory duty was discharged via the provision of the UM/UIM Election Form, which was provided

by Defendant to Mr. Daly as part of the Application for Insurance.  *Motion* [#34] at 8; *Response to Motion* [#37] at 22].  The e-mail exchange between Defendant and Mr. Daly, a copy of which was provided to Plaintiff during its investigation of whether to reform Mr. Daly's contract, further demonstrates that Mr. Daly received the documents.  Jill Skarda, an employee of Defendant, e-mailed the partially completed Application for Insurance to Mr. Daly and requested his signature on pages 5 and 6, explaining that the signature on page 6 was necessary because the selected "uninsured/underinsured limits are lower than your liability limits." *E-mail from Jill Skarda* [#37-10] at 2.  Mr. Daly responded the following day stating that he faxed back "the signed pages." *E-mail from Mr. Daly* [#37-12] at 2; *Aff. of Jill Skarda* [#37-3] ¶ 10.  The Court finds that the totality of the circumstances shows the statutory duties were discharged, and that there is no genuine issue of material fact regarding the same.

Based on the foregoing, the Court concludes that Plaintiff paid Mr. Daly an excess of $450,000 due to a mistake of law, and therefore cannot recover from Defendant because the damages it incurred were not a direct result of Defendant's breach.  *Allstate*, 830 P. 2d at 914 (stating insurer would be entitled to judgment as a matter of law where insurer adequately notified insured of right to obtain maximum UM/UIM coverage).  Furthermore, Plaintiff's loss was not reasonably foreseeable as a probable result of any breach, because it was not reasonably foreseeable that Plaintiff would act under a mistake of law.  *See Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 370 P.3d 353, 360 (Colo. App. 2016) (stating "the loss must have been foreseeable as the probable result of the breach"); *Giampapa v.*

*Am. Family Mut. Ins. Co.*, 64 P. 3d 230, 240 (Colo. 2003).[4]

In addition to Plaintiff's argument that reformation of the policy was required by operation of law, Plaintiff also argues that the contractual terms in the UM/UIM Election Form provided to Mr. Daly mandated that Plaintiff reform the policy. *Reply in Support of Motion* [#44] at 4.  In the briefing on the Plaintiff's Motion, Plaintiff did not raise this argument until the Reply brief.  The Court therefore does not consider this argument here. *See Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (stating that "arguments first raised in a reply brief come too late"); *Ulibarri v. City & Cty. of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) (argument first raised in reply brief may be disregarded).  However, it will be considered below as a properly raised contention pertaining to the Cross-Motion.

For the foregoing reasons, Plaintiff's Motion [#34] is **DENIED**.

### IV.  Defendant's Cross-Motion for Summary Judgment [#50]

The parties largely repeat their prior arguments in their briefing on the Cross-Motion for Summary Judgment.  As discussed above, the Court agrees with Defendant that Plaintiff's mistake of law caused Plaintiff's damages, that there is no genuine issue of material fact regarding Plaintiff's breach of contract claim, and that summary judgment should enter for Defendant.

The Court considers Plaintiff's further argument properly raised in the briefing on the Cross-Motion.  In Plaintiff's Response to the Cross-Motion, it maintains that the insurance

---

[4] Given the Court's conclusion that Plaintiff's damages were not the result of Defendant's breach of the contract, the Court does not reach Defendant's affirmative defense that Plaintiff failed to mitigate its damages, or Plaintiff's responses regarding mitigation.  *See Response to Motion* [#37] at 26-28; *Reply in Support of Motion* [#44] at 6-8.

agency was required to reform Mr. Daly's coverage by operation of law, but additionally argues that the contractual terms in the UM/UIM Election Form itself also mandated reform of the policy.  *Response to Cross-Motion* [#51] at 2 ("Progressive was required either by operation of law *or the terms of its contractual agreement with Mr. Daly* to reform the Policy to reflect UM/UIM coverage in an amount equal to the bodily injury liability limits.") (emphasis added).  The Form states as follows:

> I understand that if I elect lower limits or reject Uninsured/Underinsured Motorist Bodily Injury Coverage, the election or rejection will not be effective until the Company receives this signed and completed form showing my selection.  I understand that my limits of Uninsured/Underinsured Motorist Bodily Injury Coverage will remain equal to the limits of liability coverage for bodily injury that I have selected until the form is received by the Company.

*UM/UIM Election Form* [#37-2] at 7.  Plaintiff argues that this language means "Progressive was required to reform the Policy once it was unable to provide a signed form reflecting Mr. Daly's selection of lower UM/UIM coverage upon request from Mr. Daly's counsel." *Response to Cross-Motion* [#51] at 5.  Defendant counter-argues that the "[F]orm does not include any promise [by Plaintiff] to produce a signed version upon an insured's request," and therefore failure to do so did not require Plaintiff to reform the policy.  *Reply in Support of Cross-Motion* [#52] at 5.

The interpretation of a contract is a question of law for the Court.  *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005).   When contract language is unambiguous, the Court must apply it as written.  *Fort Lyon Canal Co. v. High Plains A & M, LLC*, 167 P.3d 726, 728-29 (Colo. 2007) (stating that "extrinsic evidence of intent can never contradict or change the language of a contract or justify an interpretation not reasonably derivable from the contract itself").   The plain language of the Form solely

states that the "election or rejection will not be effective until the Company receives this signed and completed form showing my selection." *UM/UIM Election Form* [#37-2] at 7. Plaintiff has admitted receiving Mr. Daly's signed UM/UIM Election Form. *Plaintiff's Responses to Defendant's Interrogatories* [#52-1] at 3-4 ("Progressive states that it received the 'Application for Insurance' submitted by Taggart on behalf of Thomas J. Daly" and that "Progressive charged Mr. Daly for premiums for UM/UIM limits of $50,000 per person/$100,000 per accident because that was the amount of UM/UIM limits that Taggart represented Mr. Daly had selected based upon the aforementioned Application for Insurance that Taggart submitted to Progressive on Mr. Daly's behalf"). Based upon these admissions, it appears Plaintiff received the signed and completed Form, which put into effect Mr. Daly's election of UM/UIM coverage. Reformation of a contract is an equitable remedy that a court may grant "if the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties," such as "when there was a mutual mistake or one party made a unilateral mistake and the other party engaged in fraud or inequitable conduct." *Affordable Country Homes, LLC v. Smith*, 194 P.3d 511, 515 (Colo. App. 2008). The plain language of the Form does not require that Plaintiff produce a signed copy of the Form on request by an insured, nor did the circumstances here call for reformation of the contract between Plaintiff and Mr. Daly. Therefore, Plaintiff's inability to produce a signed copy did not contractually require it to reform the Policy.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#34] is **DENIED**.

-12-

IT IS FURTHER **ORDERED** that the Cross-Motion [#50] is **GRANTED**, and that judgment shall enter in favor of Defendant.  The Clerk of Court shall close this case.

IT IS FURTHER **ORDERED** that all deadlines as well as the following settings are **VACATED**:

- Status Conference set for April 12, 2017, at 1:30 p.m.,

- Final Pretrial Conference set for April 13, 2017, at 9:30 a.m.,

- Trial Preparation Conference set for April 13, 2017, at 9:30 a.m.,

- Jury Trial set for April 17-20, 2017, at 9:00 a.m.

Dated:  February 1, 2017                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge